

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Saddiq Abdul-Baaqiy
_____
                                          Plaintiff

                    vs.

Federal National Mortgage Association (Fannie Mae)
_____
                                          Defendant

Case Number **15 - 0001077**

Serve on: Federal National Mortgage
Association (Fannie Mae)
3900 Wisconsin Ave, NW
Washington, DC 20016-2892

**SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____
Name of Plaintiff's Attorney

1828 L Street, NW, Suite 820
_____
Address
Washington, DC 20036

(202) 785-2805
_____
Telephone

_Clerk of the Court_

By _____
                              Deputy Clerk

Date _____

如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                          CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____
                                    Demandante

contra                                                    Número de Caso: _____

_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                            _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante
                                                    Por: _____
_____                                        Subsecretario
Dirección

                                                    Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
        번역을 원하시면, (202) 879-4828 로 전화주십시오        ያስተረጓሚ ትፈልጉ ከሆነ ስልክቁጥር (202) 879-4828 ይደውሉ

        **IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.**

        Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

                                Vea al dorso el original en inglés
                                See reverse side for English original

                                                                        CASUM.doc

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **Saddiq Abdul-Baaqiy**<br>**3003 LaDova Way**<br>**Springdale, MD 20774**<br><br>**v.**<br><br>**FEDERAL NATIONAL MORTGAGE**<br>**ASSOCIATION**<br>**4000 Wisconsin Avenue, NW**<br>**Washington, DC 20018**<br><br>**DEFENDANT.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |



**FILED**
**CIVIL ACTIONS BRANCH**
FEB 1 9 2015
Superior Court
of the District of Columbia
Washington, DC.

15 - 0 0 0 1 0 7 7

<u>**CLASS ACTION COMPLAINT**</u>

1.     This is a class action brought by Plaintiff Saddiq Abdul Baaqiy ("Abdul-Baaqiy") on behalf of himself and other similarly situated individuals against Fannie Mae. Abdul-Baaqiy and Class Members were subjected to a pattern and practice of discrimination, including disparate treatment, and personnel policies and practices which have a disparate impact on African Americans. Abdul-Baaqiy and Class Members seek relief pursuant the Civil Rights Act of 1991, 42 U.S.C. Section 1981 ("Section 1981"), and the D.C. Human Rights Act, (DCHRA) including but not limited to declaratory, injunctive and other equitable relief, and compensatory and punitive damages, litigation expenses and reasonable attorneys fees, based on Defendant's continuing deprivation of rights accorded to the named Plaintiff and members of a class of African American employees.

2.     As evidence of Defendant's pattern and practice of race discrimination, Abdul-Baaqiy and Class members allege the following specific examples of disparate treatment.



1



3.     Fannie Mae engaged in a pattern or practice of discrimination against African American staff in compensation, discipline and termination that affected an entire class of individuals. Specifically, African American staff are subjected to subjective discipline which results in lower evaluations at a higher rate than Caucasians; and African American are subjected to discriminatory performance evaluations and terminations at a higher rate than Caucasians. Beginning in approximately 2008, Defendant adopted a new arbitrary performance evaluation system which required managers to group employees in different categories with corresponding scores. Employee were scored -- not meeting expectations, meeting expectations, or exceeding expectations, regardless of whether the employee met the performance objectives. The "forced ranking" practice continued ever after Fannie Mae sent a notice to employees that it would no longer mandate a "forced ranking" performance evaluation policy. This policy and practice had a disparate impact on African American employees because managers were forced to issue lower performance appraisals to a certain number of employees regardless of their performance. African American are subjected to discrimination in the terms, conditions and privileges of employment and this intentional discrimination policy and practice is Fannie Mae's standard operating procedure.

a.     **Glass ceiling.** At Fannie Mae, African American employees experience a "glass ceiling" or barrier to equal opportunity advancement. Few African Americans advance to senior levels in the company, especially when compared to the significant representation of African Americans employees. African Americans are under-represented in management and higher paid professional positions.

b.     **Willful disregard of diversity and equal employment opportunity.** At Fannie Mae, executive management is aware that African Americans are grossly under-

2

represented in management and supervisory positions.  Fannie Mae is further aware that this gross disparity is the result of systematic discrimination against African American staff in performance evaluations and discipline; and personnel policies having a disparate impact on African Americans. Despite having an Equal Employment Opportunity policy, Fannie Mae refuses to take affirmative steps to promote diversity and equal employment opportunity.

4.      This discrimination represents a company-wide pattern and practice, rather than a series of isolated incidents.   Fannie Mae's written and unwritten policies and practices regarding compensation, performance appraisals, discipline, and termination subject the named Plaintiff and the Class to ongoing disparate treatment, and have a disparate impact on African American employees.  Fannie Mae's actions constitute a continuing violation of the rights of the named Plaintiff and the Class, and have been ongoing since 2008.

### Parties

5.      Saddiq Abdul-Baaqiy is an African American, a citizen of the United States, and a resident of the State of Maryland who is a former employee at Fannie Mae.

6.      Fannie Mae is a Government Sponsored Enterprise (GSE) with corporate headquarters in Washington, D.C.  Plaintiff's complaint concerns the actions of senior managers at Fannie Mae.

### Individual Claims

7.      Mr. Abdul-Baaqiy began employment at Fannie Mae in 1996 and worked through 1999, and was again employed from 2001 through April 2011.  Mr. Abdul-Baaqiy's last position was Application Developer Analyst II.  He consistently received satisfactory performance reviews through 2009.

3

8.      In mid-2009, Fannie Mae implemented a new performance review policy across the organization.  Pursuant to this policy, Fannie Mae established in each department a quota for the number of high performance reviews the managers could award.  Managers were thus required to underrate employees so that they would not exceed their quotas of high performance reviews. This policy gave managers the discretion and impetus to target certain groups of employees - particularly African Americans - for poor performance reviews, and required managers to justify poor performance reviews with false accusations of misconduct and other stereotypical and subjective assessments of employees' performance.  As a result of this policy, African Americans were systematically marginalized, falsely accused of misconduct, issued false performance appraisals based on vague and subjective criteria, and disciplined, or received lower compensation, or terminated for poor performance.  This performance review policy and practice, which has a disparate impact on African Americans, remains standard operating procedure at Fannie Mae through the present, and resulted in Plaintiff's discriminatory termination, as set forth below.

9.      In 2004, Mr. Abdul-Baaqiy was assigned to work on a critical project to replace a legacy system for investor services known as Servicing Investor Reporting (SIR).  Mr. Abdul-Baaqiy's performance on this project was outstanding and earned him high performance ratings and several pay bonuses.  He performed a variety of duties on this project, which enhanced his skill sets in modeling data warehouse databases and requirements analysis, leading him to excel in his duties as a reports developer and project manager.  Mr. Abdul-Baaqiy performed these duties through April or May 2009, under at least five different managers, and no issues were ever raised with his performance.

10.     After winding down on the SIR project, Mr. Abdul-Baaqiy was assigned to work on Making Home Affordable (MHA), a similar, but scaled-down, version of SIR.  Mr. Abdul-Baaqiy

4

was assigned to the Reports team, where he had the most experience in leveraging SIR's infrastructure to build a reporting system.   However, Mr. Abdul-Baaqiy's manager, Steve Gonsalves, Caucasian male, did not provide Mr. Abdul-Baaqiy any guidance or specificity as to his assigned tasks.  Rather, Mr. Abdul-Baaqiy had to take the initiative himself to convey to his team the methods by which SIR built its reporting system.   Additionally, Mr. Abdul-Baaqiy interacted with the data modelers by providing information regarding SIR, and established a road map for completing the project. This work covered every aspect of the project and was critical to the project's ultimate success for the initial build and release.  During the course of developing this information, there were disagreements with members of the team, but Mr. Gonsalves never provided instructions or guidance on resolving issues.  Nevertheless, even with his job duties substantially hindered by the inaction of his supervisors, Mr. Abdul-Baaqiy delivered the Reports' first baseline to production, which is considered a milestone in the MHA project.

11.     Significantly, throughout this period, Mr. Abdul-Baaqiy was never approached by management with concerns regarding his performance.  Mr. Abdul-Baaqiy constantly engaged his supervisors in progress discussions, and they never indicated that Mr. Abdul-Baaqiy was not meeting Fannie Mae's needs.  Finally, after numerous requests, Mr. Abdul-Baaqiy was given a mid-year review in the form of a casual conversation with his then-current supervisor, Steve Gonsalves. Mr. Gonsalves generally disregarded Mr. Abdul-Baaqiy's accomplishments and made vague allegations that Mr. Abdul-Baaqiy failed to engage team members.  Mr. Abdul-Baaqiy felt this feedback was highly subjective and did not accurately represent his initiative and accomplishments.  Nonetheless, Mr. Abdul-Baaqiy was encouraged to continue along the same path.

12.     In 2010, Mr. Abdul-Baaqiy was assigned to work on project tasks to build a new function to address compensation.  This assignment was outside the Reports domain where Mr. Abdul-Baaqiy had worked the previous several years.  By the time Mr. Abdul-Baaqiy had completed approximately thirty percent of the tasks, his job duties on the project began to be systematically removed.  He had already completed most of the tasks assigned to him, but his involvement on the project gradually lessened, and he was not informed that his duties were removed while being criticized for his lack of availability.  Mr. Abdul-Baaqiy requested that he and other Reports developers be added to the team's mailing list so he could remain abreast of the project's development, but it was not until several weeks later that his request was granted.  Eventually, Mr. Abdul-Baaqiy was left with no tasks on the compensation project, and after a team reorganization he went for two to three months with no new tasks assigned to him.  Mr. Abdul-Baaqiy repeatedly expressed concern to management that he was underutilized, but no remedial action was taken.

13.     Mr. Abdul-Baaqiy's 2010 performance review was conducted by a new manager, Sarbari Roy, Indian female, to whom he had reported for roughly three (3) months.  This performance review identified several deficiencies.  Like his prior review, however, the 2010 performance review relied heavily on subjective criteria, while largely disregarding the objective goals that Mr. Abdul-Baaqiy met with success.  For instance, Mr. Abdul-Baaqiy was underutilized and given no concrete guidance in performing the scant duties he was assigned.  Furthermore, Mr. Abdul-Baaqiy's performance review falsely claimed that he had skill gaps, yet Mr. Abdul-Baaqiy is one of at most four individuals in the position of Application Developer Analyst II out of more than forty technical full time employees.  Given the technical expertise on his team, the fact that his experience was largely within the Reports domain, the lack of guidance he was given by his supervisors, and the fact that he met all the objective goals of the project, characterizing Plaintiff

6

as lacking certain skills was highly inaccurate and unfairly subjective.  Plaintiff was terminated

from his position in April 2011.

14.     Since 2008, a number of African American employees Fannie Mae have  received lower

performance appraisals and resulting lower compensation and bonuses, had their core duties

reassigned to non-African American employees, and have been terminated, when the criteria on

which they were evaluated is highly subjective and they met all objective goals of their positions.

Fannie Mae is aware that its employment practices have a disparate impact on African American

employees.

## Class Action Claims

15.     Plaintiff brings this Class action on behalf of himself and all others similarly situated, for

the purpose of asserting the claims alleged in this Complaint on a common basis. Plaintiff's

proposed class is defined as all African American employees, who were subjected to adverse

personnel actions in lower performance appraisals, discipline, and termination from 2008 through

2011.  Fannie Mae engaged in a pattern or practice of discrimination against African American

staff in work assignments, performance appraisals, compensation, discipline and termination.

Specifically, African American staff were subjected to discriminatory work assignments,

subjective performance appraisals which result in lower evaluations, lower compensation, and

discriminatory discipline and terminations.   African American staff are subjected to a

disproportionate number of lower performance evaluations than non African Americans, and

terminations at a higher rate than Caucasians. This has occurred in part because Fannie Mae has

adopted a policy and practice of deferring to managers in employment decisions such as in work

assignments, performance appraisals, discipline and termination, rather than following written

7

procedures, while directing managers to issue a certain percentage of below expectations performance appraisals.

16.     This action is brought and may properly be maintained as a Class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and, as appropriate, 23(b)(1), (b)(2) and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy and predominance and superiority requirement of those provisions.

17.     **Numerosity of the Class.  Fed. R. Civ. P. 23(a)(1).**  The Class is so numerous that the individual joinder of all its members is impracticable.   Fannie Mae has approximately 4,000 employees.  Plaintiff believes, from his research, that during the period from 2008 to 2012, Fannie Mae has taken personnel actions with adverse consequences, on most of not all of African American employees.  As a result, there are potentially several hundred members of the proposed class.  Joinder of all class members is therefore impracticable.   The precise number of potential class members can be calculated more accurately from Fannie Mae's records.

18.     **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a) and 23(b)(3).**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions arise from one central issue, which does not vary from Class member to Class member and which may be determined without reference to the individual circumstances of any particular Class member. These common legal and factual questions include, but are not limited to the following:

    a.      Whether Defendant institutionally and systematically fails to provide Plaintiff and Class members equal employment opportunity when Defendant:

i.      maintains a discriminatory performance evaluation policy and/or practice where managers are required to rate a certain percentage of employees as falling below expectations regardless of their performance;

ii.     disproportionately subjects African American staff to subjective performance appraisals which results in lower evaluations at a higher rate than Caucasians, and  African American staff receive lower compensation than Caucasians, and African American staff are subjected to discriminatory terminations at a higher rate that Caucasians;

iii.    utilizes work assignments and evaluations which favor Caucasian employees while excluding African America employees at Fannie Mae;

iv.     retaliates against employees who complain of discrimination by issuing lower performance reviews and terminating employees who complain of discrimination under the pretext of performance;

v.      conspires to downplay and dismiss the gross racial disparity in upper management and conspires to downplay and dismiss complaints of discrimination by actively fostering an environment that discourages equal employment opportunity activity and encourages retaliation against employees who complain about discrimination;

vi.     refuses to monitor and discipline managers for violation of equal employment opportunity laws and company policies;

vii.    adopts personnel policies and procedures that have a disparate impact on African Americans;

9

b.       Whether Defendant's actions violated Plaintiff's and the Class members' rights under Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981 ("Section 1981"), and the D.C. Human Rights Act;

c.       Whether Defendant and  Class members are entitled to (1) a declaration of their eligibility to receive damages or other monetary relief; (2) costs; (3) attorneys fees; and (4) interest from the date they should have been paid to the actual date of payment; and

d.       How any and all payments Plaintiff and Class members are declared eligible to receive should be equitably allocated among the Class.

19.     **Typicality of Claims. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of the members of the Class, all of whom have been denied equal access to equal employment opportunities, and have been subject to Defendant's institutional and systematic failure to enforce the civil rights laws intended to benefit Plaintiff and members of the Class, due to Defendant's arbitrary and unlawful actions.

20.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).**   Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with interests of the members of the Class he seeks to represent.  Plaintiff has retained competent counsel experienced in the prosecution of EEO disputes, experienced in civil rights litigation and class actions, and they intend to prosecute this action vigorously for the benefit for the Class.

21.     The Class will be represented by the Law Offices of David A. Branch and Associates, PLLC in this matter.  Mr. Branch served as a staff attorney for the U.S. Court of Appeals for the District of Columbia Circuit for three years following a judicial clerkship and has been in private practice for sixteen years.  Mr. Branch has served as lead counsel in approximately 80 employment discrimination cases before the EEOC and local administrative agencies, and state and federal

court. The Law Offices of David A. Branch and Associates, PLLC is one of several firms representing Black Farmers against the USDA in Pigford v. Glickman, C.A. 97-1978 (PLF). The Law Office of David A. Branch is Class Counsel in Charles Taylor, et al. v. D.C. Water and Sewer Authority, U.S. District Court Civil Action No. 2001 CV 0561, a class action which has been certified by the U.S. District Court for the District of Columbia, and Armstrong v. Timothy Geithner, Secretary, Department of the Treasury, EEOC No. 100-A0-7833X, a class action pending before the EEOC which was filed in 1999 and settled in 2009.

22.    The interests of the members of the Class will be fairly and adequately protected by Plaintiff and Lead Counsel.

23.    **Superiority. Fed. R. Civ. P. 23 (b) (2) and (3).** Fannie Mae has acted and failed to act on grounds generally applicable to the proposed class. The racially discriminatory practices described in paragraphs above, which prevent African Americans from progressing through positions at Fannie Mae, have impacted and continue to impact the entire class in the same general fashion. The pattern and practice of discrimination challenged herein also includes Fannie Mae's failure to adopt adequate means of auditing decisions to detect patterns of discrimination and its failure to create adequate EEO incentives and disincentives for its managers, both of which are generally applicable to the class.

24.    As a result, appropriate final injunctive and declaratory relief will be appropriate for the class as a whole.

25.    The requested injunctive and declaratory relief predominates over other forms of requested relief in this action because such injunctive and declaratory relief, which is broad and detailed in scope, is crucial in bringing Plaintiff into compliance with the law and to remedying the effects of Fannie Mae's unlawful conduct.

26.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of Class members claims regarding the Defendant's institutional and systematic deprivation of their civil rights as described in this Complaint is impracticable. Individual litigation further presents a potential for inconsistent and contradictory judgments and increases the delay and expenses to all parties and the court system in resolving the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication of what essentially is one problem, economies of scale, and comprehensive supervision by a single court.  Notice of the pendency of any resolution of this class action can be provided to class members by publication; in addition, Defendant has the class members' addresses and personnel files on computer, readily available.

27.     The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2) because:

a.      The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendant;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or would substantially impair or impede the ability of such non-party Class members to protect their interests; and Respondent has acted on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## COUNT I

12

## INDIVIDUAL AND CLASS CLAIMS

### The Civil Rights Act of 1866, 42 U.S.C. Sec. 1981

28.     Plaintiff and Class Members reallege and incorporate by reference paragraphs 1 through 27 above as if set forth fully herein.

29.     Fannie Mae has denied Plaintiff and all members of the proposed class the same right to make and enforce contracts as enjoyed by white citizens employed at Fannie Mae, including rights involving the making, performance, modification, and termination of contracts with Fannie Mae and the enjoyment of all benefits, privileges, terms, conditions, of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981, as amended.  Fannie Mae engaged in a pattern or practice of discrimination against African American managers and professional staff in work assignments, performance appraisals, compensation, discipline and termination. Specifically, African American professional staff and managers are subjected to discriminatory work assignments, subjective performance appraisals which result in lower evaluations, and lower compensation, and discriminatory discipline and terminations. African American managers and professional staff are subjected to disproportionate number of lower performance evaluations than non African Americans, and terminations at a higher rate than Caucasians.  This disparate treatment is a direct, proximate, and foreseeable result of Fannie Mae's policy of limiting the number of high performance reviews managers may issue, which forces managers to make false accusations against employees and utilize subjective criteria in evaluating employees in order to not exceed the quota of high performance reviews.

30.     In the employment practices described above, Fannie Mae acted in intentionally, maliciously, and with willful, wanton and reckless indifference to the federally protected rights of the named Plaintiff and the members of the class they represent. Intentional discrimination against

African Americans staff has been and continues to be a standard operating procedure with Fannie Mae.

31.    As a result of the acts of Fannie Mae described above, the named Plaintiff and the members of the class he represents have suffered and continue to suffer harm, including but not limited to loss of employment, financial loss, humiliation, embarrassment, emotional distress and mental anguish.

32.    By reason of Fannie Mae's discrimination, Plaintiff and members of the proposed class are entitled to all legal and equitable remedies under Sec. 1981, as amended.


## COUNT II
## INDIVIDUAL AND CLASS CLAIMS

### VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT
### Discrimination

Plaintiff adopts by reference each of the allegations in the paragraphs above.

33.    At all pertinent times, Fannie Mae was an employer subject to the provisions of the District of Columbia Human Rights Act, D.C. Code Ann. Sec. 2-1401 et seq. of the District of Columbia Code.

34.    The D.C. Human Rights Act prohibits discrimination in employment based on individual's race.

35.    Defendant, in violation of the D.C. Human Rights Act knowingly and intentionally engaged in unlawful discrimination against Plaintiff based on his race.  Specifically, Defendant, through its managers, maligned his reputation as a seasoned and experienced professional; portrayed him as a difficult employee with his peers; issued him a false evaluation; excluded him from critical meetings and thereby denied him the opportunity to acquire knowledge to complete

14

responsibilities; and removed him from employment.   In addition, Fannie Mae engaged in a pattern or practice of discrimination against African American managers and professional staff in work assignments, performance appraisals, compensation, discipline and termination. Specifically, African American professional staff and managers are subjected to discriminatory work assignments, subjective performance appraisals which result in lower evaluations, and lower compensation, and discriminatory discipline and terminations. African American managers and professional staff are subjected to disproportionate number of lower performance evaluations than non African Americans, and terminations at a higher rate than Caucasians.   This disparate treatment is a direct, proximate, and foreseeable result of Fannie Mae's policy of limiting the number of high performance reviews managers may issue, which forces managers to make false accusations against employees and utilize subjective criteria in evaluating employees in order to not exceed the quota of high performance reviews.

36.     Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

37.     Defendant had no legitimate business reason for any such acts.

38.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

### **Prayer for Relief**

WHEREFORE, Plaintiff Saddiq Abdul Baaqiy prays as follows:

A.       That the Court issue an order certifying the Class, and any appropriate subclass thereof, under the appropriate provisions of Fed. R. Civ. P. 23, and appointing Plaintiff (class

15

representatives) and David A. Branch and the Law Offices of David A. Branch and Associates, PLLC, as Lead Counsel to represent the Class;

B.      Enter judgment against the Defendant;

C.      That the Court issue an Order declaring Defendant's actions to be a violation of Plaintiff's rights under 42 U.S.C. Sec. 1981, as amended, and the District of Columbia Human Rights Act, D.C. Code Ann. Sec. 2-1401 et seq. of the District of Columbia Code, and declaring Plaintiff eligible to receive equitable and other relief;

D.      Issue a permanent injunction prohibiting Fannie Mae and its officers, agents, employees, and successors from engaging in any discriminatory work assignments, performance appraisals, discipline and terminations;

E.      Order Fannie Mae to restrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

F.      Enter judgment in favor of Plaintiff against Fannie Mae for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

G.      Order Fannie Mae to pay compensatory and punitive damages in amounts to be determined at trial;

H.      Order Fannie Mae to pay pre-judgment and post-judgment interest as provided by law; and

I.      Retain jurisdiction for five years or until such time as the court is satisfied that Fannie Mae has remedied the practices complained of herein and is determined to be in full compliance with the law.

Respectfully submitted,

David A. Branch, DC Bar #438764
Law Offices of David A. Branch and
Associates, PLLC
1828 L Street, NW #820
Washington, D.C.  20036
(202) 785-2805 phone
(202) 785-0289 fax
dablaw@erols.com

## JURY DEMAND

Plaintiff demands a jury trial on all counts.